IN THE UNITED STATES COURT FOR THE DISTRICT OF UTAH

CENTRAL DIVISION

| | |
|---|---|
| WASATCH EQUALITY, a Utah Nonprofit Corporation; RICK ALDEN, an individual; DREW HICKEN, an individual; BJORN LEINES, an individual; and RICHARD VARGA, an individual,<br><br>    Plaintiffs,<br><br><br><br>    vs.<br><br><br><br>ALTA SKI LIFTS COMPANY, a Utah Corporation d/b/a ALTA SKI AREA; THE UNITED STATES FOREST SERVICE, an agency of the United States Department of Agriculture; and DAVID WHITTEKIEND, in his official capacity as Forest Service Supervisor in the Wasatch-Cache National Forest,<br><br>    Defendants. | MEMORANDUM DECISION<br>AND ORDER<br><br><br><br><br><br>Case No. 2:14-CV-26<br><br>Judge Dee Benson |

This matter is before the court on motions to dismiss filed by Defendants Alta Ski

Company ("Alta") and The United States Forest Service and David Whittekiend, in his official

capacity (collectively "Federal Defendants"). (Dkt. Nos. 21 & 25.) Alta's motion seeks

dismissal under Federal Rules of Civil Procedure 8 and 12(b)(6), and the Federal Defendants'

1

motion seeks dismissal under Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6). The court

held a hearing on the motions on August 11, 2014. At the hearing, Plaintiffs were represented by

Jonathan R. Schofield, Michael S. Anderson, and Rachel L. Wertheimer. Alta was represented

by Robert O. Rice and Frederick R. Thaler. The Federal Defendants were represented by Carlie

Christensen, Acting United States Attorney, and Jared C. Bennett, Assistant United States

Attorney. At the conclusion of the hearing, the court took the motions under advisement. Since

then, the court has further considered the memoranda and other materials submitted by the

parties, the oral arguments of counsel, as well as the law and facts relating to the motions. Now

being fully advised, the court renders the following Memorandum Decision and Order.

## BACKGROUND

Plaintiffs claim to have a constitutional right to snowboard at the Alta Ski Resort.

(Compl. ¶ 5.)

The Forest Service is an agency of the federal government. David Whittekiend is a

Forest Service supervisor. (Id. ¶¶ 27-28.) Alta is a privately owned Utah corporation that

operates an all-season resort largely on Forest Service land near Salt Lake City, Utah. (Id. ¶¶ 26,

43, 47.) Alta has a Forest Service Ski Area Term Special Use Permit (the "Permit") that the

Forest Service issued on October 25, 2002. (Alta's Mot. to Dismiss, Exh. A.) The Permit allows

Alta to operate on 1,802.7 acres of National Forest Service land and requires Alta to pay a permit

fee calculated by a congressionally-mandated formula. (Id., Exh. A at 6-8.) Alta's permit fee,

which represents a percentage of revenue from all of its sources of income, amounts to less than

0.1% of the Forest Service's annual budget. See, e.g., Pub. L. No. 112-10, §§ 1741 to 1747

(appropriating over $5 billion to the Forest Service for fiscal year 2012). As of 2011, Alta was 1 of 120 ski resorts nationwide that paid a permit fee to the Forest Service under a ski area permit. (United States' Mot. to Dismiss at 3, citing S. Rep. 112-55 at 2 (2011).)

As required by the Forest Service Handbook, the Permit requires Alta to submit an annual operating plan (the "Plan") by November 15 of each year. (Alta's Mot. to Dismiss, Exh. A at 4.) Alta submitted its annual Plan for the 2013-2014 ski season on November 6, 2013. (Id., Exh. B at 1.) Among the many topics covered in the Plan, Alta addressed "Hill Management." (Id., Exh. B at 13.) In that section Alta states that it may "revoke a skier's privileges without compensation and/or call the Alta Town Marshall or the Salt Lake County Sheriff either of whom may subject the skier to arrest for a violation of skier responsibility codes, State of Utah Codes, or any violation of the law." (Id.) The Plan does not provide that Alta should call the Forest Service if Alta needs support to enforce any of its policies. (Id.)

In addition, the Plan states that Alta reserves the right to exclude those whose "skiing device" is deemed to create an "immediate risk," causes "undue damage to the quality of the snow," and "is not consistent with [Alta's] business management decisions." (Id., Exh. A at 13.) The Plan also states that Alta may restrict "[s]ledding, tubing, or snowshoeing in unauthorized areas," "[u]nauthorized use of equipment or downhill devices" and "[u]phill or downhill travel that is not approved by Alta Ski Area." (Id., Exh. A at 13, 14.) Alta allows various types of skis to be used at its resort but does not allow the use of snowboards. (Compl. ¶¶ 88, 103.) The Forest Service has not required that Alta prohibit the use of snowboards, nor has it encouraged the prohibition against the use of snowboards. (Id. ¶¶ 51-52.)

Plaintiffs have not been denied access to Alta when adhering to Alta's rules, including its equipment requirements. (<u>See</u> Compl.) There are many other ski resorts that operate on federal land under similar permits, including other resorts in Utah, such as Snowbird, Brighton, and Solitude. These resorts allow the use of snowboards. (<u>Id.</u> ¶ 59.)

There are many differences between snowboarding and skiing. The main difference is "the orientation of a person's feet," where one "stands sideways on a single snowboard," as opposed to facing directly downhill on skis. (<u>Id.</u> ¶¶ 5, 87.) People who ride a snowboard tend to have a blind spot because they stand sideways, while skiers do not have the same blind spot because they face downhill. (<u>Id.</u> ¶ 73.) According to Plaintiffs, snowboarders are often "members of the younger generation" and have their own "snowboarding counterculture" distinct from skiing. (<u>Id.</u> ¶¶ 32-33.)

Alta's business model markets itself specifically to skiing. Alta's website states: "The Alta Skiing Emphasis: By limiting the number of skiers in the area and by not allowing snowboarding, Alta strongly upholds a commitment to your skiing experience." (<u>Id.</u> ¶ 63.) According to a 2006 survey, nearly 40 percent of skiers who indicated that Alta was their favorite resort did so because snowboarding is not permitted. (<u>Id.</u> ¶ 77.) Another informal survey found that 94 percent of Alta's customers prefer to ski at a resort that caters to a skier-only market, prompting Alta-area businesspeople to agree that snowboarding should not be permitted at Alta. (<u>Id.</u> ¶ 79.) Alta customers enjoy skiing at Alta because, without snowboarding, "[t]here's not a blind spot that people talk about," they find the experience more

"peaceful, safe, and enjoyable" and the mountain is less crowded.  (Id. ¶ 73, 84.)[1]

On January 15, 2014, Plaintiffs filed this action alleging under the Administrative Procedures Act ("APA") that Alta's equipment requirement violates the Equal Protection Clause of the Fourteenth Amendment to the United States Constitution and as to the Federal Defendants, the Fifth Amendment's Due Process Clause.  (Id. ¶¶ 99-112.)  Plaintiffs seek a permanent injunction on the enforcement of Alta's "anti-snowboarding policy and snowboarding ban" and an injunction compelling Alta and the Federal Defendants "to provide snowboarders the same rights, privileges, and access given to skiers at Alta."  (Id. ¶¶ 17-19.)

Defendants move to dismiss the Complaint, asserting: (1) the court lacks subject matter jurisdiction because Plaintiffs cannot show the necessary "state action" required to invoke the Fourteenth Amendment; (2) Plaintiffs lack standing because their Complaint does not fall within the "zone of interests" emanating from the Fourteenth Amendment; (3) even if the Fourteenth Amendment and the Fifth Amendment were applicable, Plaintiffs are not "similarly situated" to skiers in all material respects and, in any event, there is a rational basis for the equipment restriction; and (4) Plaintiffs have not satisfied the pleading requirements.

---

[1] Plaintiffs also allege in their Complaint that Alta's requirement as to the use of snowboards was instituted for at least the following reasons: 1) Alta's customer base prefers to ski where there's no snowboarding and its "business model caters to a skier-only market"; 2) Alta prefers to "maintain a 'skiing culture'"; 3) Alta's "terrain is not conducive to snowboards"; and 4) Alta's equipment requirements aid in maintaining "the quality of the snow."  (Pls.' Compl. ¶ 51, 73-74.)

## DISCUSSION

### State Action

The Plaintiffs claim their constitutional rights are violated by Alta's rule prohibiting the use of snowboards. They base their case on the Fourteenth Amendment to the United States Constitution which guarantees all people the right to equal protection of the laws.[2] Their Complaint recognizes, as it must, that the Fourteenth Amendment is only applicable to actions by the Government and does not reach the conduct of private parties. They claim the state action requirement is met by the fact that Alta is situated on federal land and operates under a lease with the Forest Service.

In their motions to dismiss, the Defendants acknowledge the existence of the lease and the association between Alta and the Forest Service that it entails, but claim those connections fall short of constituting the kind of state action necessary to support any civil rights action, including this one. On that point, the Defendants are correct. On that basis alone this case must be dismissed.

The court recognizes that the case law in this area – whether or not there exists "state action" – can be quite challenging to understand and decipher. The United States Court of Appeals for the Tenth Circuit has referred to this subject as "one of the more slippery and troublesome areas of civil rights litigation." Gallagher v. Neil Young Freedom Concert, 49 F.3d 1442, 1447 (10th Cir. 1995) (quoting International Soc'y for Krishna Consciousness, Inc. v. Air Canada, 727 F.2d 253, 255 (2d Cir. 1984 (per curiam) and Graseck v. Mauceri, 582 F.2d 203,

---

[2] "No state shall . . . deny to any person within its jurisdiction the equal protection of the laws." U.S. Const. amend. XIV, § 1.

204 (2d Cir. 1978), <u>cert. denied</u>, 439 U.S. 1129 (1979)). While this may be true in certain situations, this case is not one of them. For purposes of demonstrating state action, the question is whether Alta's decision to ban snowboards may fairly be attributable to the Federal Defendants, <u>see</u> <u>Lugar v. Edmondson Oil Co. Inc.</u>, 457 U.S. 922, 937 (1982), <u>Flagg Bros., Inc. v. Brooks</u>, 436 U.S. 149, 156 (1978), and here there are no facts alleged to support such involvement by the government. The Plaintiffs make no allegation, and have presented no evidence whatsoever, that the Forest Service did anything to influence Alta's decision to ban snowboards at its resort. The decision was Alta's, and Alta's alone, operating as a private business. The Forest Service did not encourage the rule, discourage the rule, agree with the rule, or disagree with the rule; nor was the Forest Service consulted on the appropriateness of the rule. Under such circumstances, pursuant to all existing precedent binding on this court, there is no state action.

The Tenth Circuit case of <u>Gallagher v. Neil Young Freedom Concert</u>, 49 F.3d 1442 (10th Cir. 1995), is instructive and dispositive. The <u>Gallagher</u> plaintiffs were ticket holders for a rock concert held at the University of Utah's Huntsman Center and were subjected to pat down searches by a private security company before being admitted into the concert. Plaintiffs filed suit against the University of Utah and the concert promoter alleging that the pat down searches constituted an illegal search under the United States Constitution because the security company's pat down searches were really "state action," and because the University, the promoter, and the security company were in a "symbiotic relationship." <u>Id.</u> at 1446. The plaintiffs claimed that such a relationship existed because: (1) the searches occurred on the University of Utah's

property; (2) the University received rent based on the concert's gross ticket sales; and (3) University police officers stood nearby watching the pat down searches take place. Id. at 1445, 1452-53.

The Tenth Circuit rejected plaintiffs' claims and held that no state action had occurred, stating: "The fact that certain conduct occurs on public property does not establish state action." Id. at 1452. Rather, the plaintiffs must show something more than the mere use of a public building to demonstrate significant intertwining between the promoter and the University. Id. The court held that plaintiffs failed to show that "the allegedly unconstitutional conduct generated profits that were indispensable elements in the University's financial success. . . . Therefore, as to the profits the University received from the Neil Young concert, the element of indispensability is clearly lacking." Id. at 1453.

To further illustrate this point, the Tenth Circuit in Gallagher cited Vincent v. Trend Western Technical Corp., 828 F.2d 563 (9th Cir. 1987), which declined to find state action by the United States Air Force based on a contractor's alleged civil rights violations. In Vincent, the Ninth Circuit found that although the contractor "may have been dependent economically on its contract with the Air Force," the contract in question "was most certainly not an indispensable element in the Air Force's financial success." Id. at 569. Following the Ninth Circuit's approach in Vincent, the Gallagher court found that the promoter did not have a symbiotic relationship with the University and, therefore, no state action occurred. Gallagher, 49 F.3d at 1453.

The Tenth Circuit's analysis in Gallagher is dispositive in this case. The mere fact that

Alta operates most of its ski resort "on public property does not establish state action." Id. at 1452. In addition, Plaintiffs cannot show that Alta's annual rental fee is "an indispensable element in the [Forest Service's] financial success." Id. at 1453 (citing Vincent, 828 F.2d at 569). To prove the element of indispensability, Plaintiffs must show that the "allegedly unconstitutional conduct generated profits that were indispensable elements of [the Forest Service's] success." Id.

In this case, Alta's permit fee constitutes less than 0.1 percent of the Forest Service's annual budget. This scant percentage is even smaller if this court considers the revenue from more than 100 ski area permits plus timber harvesting permits and all other permitted activities for which the Forest Service collects fees. By looking at the profits the Forest Service receives from Alta, it is clear that the element of indispensability is lacking.

In Gallagher, the Tenth Circuit stated that it relies on four different tests to determine whether private action amounts to state action in civil rights cases. Those tests are: (1) the nexus test, (2) the symbiotic relationship test, (3) the joint activity test, and (4) the essential state function test. Id. at 1447. Gallagher dealt primarily with the symbiotic relationship test but also addressed the other tests. In the present case, the Plaintiffs appear to rely on the symbiotic relationship and the nexus tests. For the reasons stated above, under all of the facts and circumstances of this case, the court finds insufficient involvement by or with the federal government in connection with the challenged action to support a finding of state action in this case under either of those tests or any other test. It is undisputed that pursuant to its lease with the Forest Service, Alta has the sole authority to determine whether a "skiing device" is deemed

to create an "immediate risk," causes "undue damage to the quality of the snow" and "is not consistent with [Alta's] business decisions." (Alta's Mot. to Dismiss, Exh. B, Winter Site Operation Plan.) As mentioned above, it is further undisputed that Alta's decision to impose a snowboard ban was Alta's own business decision with which the Forest Service had no input or involvement. The government observed in its brief that there are some 120 ski areas operating on United States Forest Service lands in the United States. One hundred nineteen allow snowboards. One (Alta) does not. The Forest Service had nothing to do with the decision of the 119 to permit snowboards and nothing to do with Alta's decision otherwise. Plaintiffs' assertion that the Forest Service is sufficiently involved in this case to constitute state action and thereby involve the 14th amendment is unsupportable as a matter of fact and law.[3]

### The Equal Protection Clause

Even if the relationship between Alta and the Forest Service were deemed sufficient to constitute state action, Plaintiffs' case must still fit within the zone of rights protected by the Fourteenth Amendment. While it is true the Fourteenth Amendment uses general language and has been interpreted during the intervening decades since its passage shortly after the Civil War to have a broad reach, its reach is not limitless. The Fourteenth Amendment was passed to ensure that the newly freed slaves would be treated as equals under state law (while the Due Process Clause of the Fifth Amendment was later interpreted to impose an identical requirement

---

[3] Both Alta and the Federal Defendants devote considerable space in their briefs to this issue. The Acting United States Attorney also addressed the subject, and each of the four tests, in detail, at oral argument. In reaching its finding that the state action requirement is not satisfied in this case, the court adopts in full the arguments presented in the Defendants' briefs as well as their oral arguments.

on the federal government. See Buckley v. Valeo, 424 U.S. 1, 93 (1976)). As a result, the jurisprudential focus on and application of the Amendment to all classifications based on race cannot be questioned. The earliest United States Supreme Court cases on the Amendment dealt with issues of race discrimination against African-Americans. Brown v. Board of Education, 347 U.S. 483, 492 (1954) (declaring laws that establish separate but equal schools for black and white students unconstitutional); Loving v. Virginia, 388 U.S. 1, 10 (1976) (invalidating laws prohibiting interracial marriage); Shelley v. Kraemer, 334 U.S. 1, 23 (1948) (holding that courts could not enforce racial covenants on real estate). Since then the Supreme Court has further addressed the reach of the Equal Protection Clause on numerous occasions, most notably with respect to classifications based on national origin, Oyama v. California, 332 U.S. 633, 644-46 (1948), alienage, Graham v. Richardson, 403 U.S. 365, 372 (1971), gender, United States v. Virginia, 518 U.S. 515 (1996), Craig v. Boren, 429 U.S. 190, 197 (1976), and illegitimacy, Gomez v. Perez, 409 U.S. 535 (1973), Weber v. Aetna Casualty & Surety Co., 406 U.S. 164 (1972).

From that case law, two constructs have emerged: "suspect classes" and "fundamental rights." Specifically, the Supreme Court has emphasized that classifications based on "immutable characteristics" that "frequently bear no relation to ability to perform or contribute to society," are inherently suspect and require heightened scrutiny. Frontiero v. Richardson, 411 U.S. 677, 686 (1973) (plurality opinion). Thus "strict scrutiny" is required for classifications based on race, alienage, or national origin. Graham v. Richardson, 403 U.S. 365 (1971). This reflects the fact that such classifications are almost never an acceptable justification for disparate

treatment under the law by state action.

Similarly, discrimination among people as to the exercise of a fundamental right, such as the right to vote, Storer v. Brown, 415 U.S. 724, 756 (1974), or the right to interstate travel, Atty. Gen. of N.Y. v. Soto-Lopez, 476 U.S. 898, 906 (1986), "must be closely scrutinized and carefully confined."  Harper v. Virginia State Bd. of Elections, 383 U.S. 663, 670 (1966).

Accordingly, in cases involving suspect classes or fundamental rights, the law is subjected to strict scrutiny by the courts and sustained only if the government can prove that the law is narrowly tailored to serve a compelling state interest.  McLaughlin v. Florida, 379 U.S. 184, 192 (1964).

Located just below these areas requiring strict scrutiny, the Supreme Court has classified certain "quasi-suspect classes," such as gender and illegitimacy, Massachusetts Bd. of Retirement v. Murgia, 427 U.S. 307, 325 (1976), which while not subject to strict scrutiny, are subjected to a form of heightened scrutiny reflecting that these factors generally provide no sensible ground for differential treatment.  Mississippi University for Women v. Hogan, 458 U.S. 718 (1982); Mathews v. Lucas, 427 U.S. 495, 505 (1976).  To survive equal protection scrutiny, such restrictions must be "substantially related to an important state interest."  Mills v. Habluetzel, 456 U.S. 91, 99 (1982).

All other rights and classifications that are subject to the Equal Protection Clause are reviewed pursuant to a "rational-basis" standard, which is the least exacting level of review. Unlike the classifications subject to strict or intermediate scrutiny, these laws are "accorded a strong presumption of validity," Teigen v. Renfrow, 511 F.3d 1072 (10th Cir. 2007), and it is the

plaintiff's burden to overcome the presumption and show that the statute or law in question is *not* rationally related to a legitimate state interest. Heller v. Doe, 509 U.S. 312, 319 (1993). In meeting the rational-basis standard, a legislature or government decision maker is not required to actually articulate, at any time, the purpose or rationale supporting its classification. Under the rational basis test, "[a]n equal protection claim will fail if there is any reasonably conceivable state of facts that could provide a rational basis for the classification." Teigen v. Renfrow, 511 F.3d at 1083 (affirming Rule 12 dismissal of plaintiff's equal protection claim). In fact, in cases like Plaintiffs', the Tenth Circuit *presumes* the rationality of the conduct at issue and requires the Plaintiff to "overcome the presumption of rationality." Id. at 1086; see also Heller v. Doe, 509 U.S. 312, 320-21 (1993) (holding plaintiffs have the burden to establish that the policy is unconstitutional and "to negative every conceivable basis which might support it, whether or not the basis has a foundation in the record"). "[A] classification 'must be upheld against equal protection challenge if there is any reasonably conceivable state of facts that could provide a rational basis for the classification.'" Heller, 509 U.S. at 320 (quoting Federal Communications Comm'n v. Beach Communications, Inc., 508 U.S. 307, 313 (1993)).

In a case based on rational basis, defendants have "no obligation to produce evidence to sustain the rationality of [the law]." Id. According to the United States Supreme Court in Romer v. Evans:

> In the ordinary case, a law will be sustained if it can be said to advance a legitimate government interest, even if the law seems unwise or works to the disadvantage of a particular group, or if the rationale for it seems tenuous.

Romer v. Evans, 571 U.S. 620, 632 (1996).

Against this backdrop it is clear this case fits, if it fits at all, within the class of cases subject to rational basis scrutiny. Plaintiffs have never contended that they belong to a protected class or that snowboarding is a fundamental right. They allege only that Defendants denied them equal protection of the law by treating Plaintiffs differently from "similarly situated" people who wear skis. (Compl. ¶¶ 100, 103.)

Such "similarly situated" claims are known as "class-of-one" claims. <u>Kansas Penn Gaming, LLC v. Collins</u>, 656 F.3d 1210, 1216 (10th Cir. 2011) (explaining "class-of-one" theory); <u>see also</u> <u>Jennings v. City of Stillwater</u>, 383 F.3d 1199, 1210 (10th Cir. 2004) ("Plaintiff does not claim that the unequal treatment of her claim was due to her membership in any protected class or racial or gender group. Rather, she asserts that she suffered discrimination as a "class-of-one.").[4]

Accordingly, assuming for purposes of discussion that there exists "state action" in this case, the court will determine whether Plaintiffs' class-of-one case meets the requirements of the rational basis test. Before doing so, however, the court will first consider two arguments that Alta and the Federal Defendants make that this case does not properly invoke the Equal Protection Clause in any event. First, Alta asserts that the right to snowboard down a snow-covered mountain is not the kind of right anticipated by the United States Constitution, and second, the Federal Defendants claim that the snowboard ban at issue here, even if it is deemed

---

[4] Class-of-one claims may be brought by groups comprised of more than one plaintiff. <u>See, e.g.</u>, <u>Village of Willowbrook v. Olech</u>, 528 U.S. 562, 564 (2000) ("Whether the complaint alleges a class of one or five is of no consequence because we conclude that the number of individuals in a class is immaterial for equal protection analysis."); <u>see also</u> <u>Hayes v. City of Torrington</u>, 2004 WL 1498135, at *1 (D. Conn., May 26, 2004).

to have been made by a state actor, is a prudential, or discretionary, decision made pursuant to the Constitution's Property Clause and is therefore not subject to the Equal Protection Clause. The court will address each of these arguments in turn.

(i) <u>Prudential Standing</u>

Alta claims that Plaintiffs lack prudential standing because "their claimed right to wear a snowboard at Alta" is not within the "zone of interests" protected by the Fourteenth Amendment. (Alta's Mot. to Dismiss at 7.) They cite a recent Maine case where the plaintiff complained about a wind-energy project that would impact the "scenic quality of the western mountain on which she lives." <u>Alexander v. First Wind Energy, LLC</u>, 2012 WL 681838, at *1 (D. Me. Feb. 28, 2012), <u>report and recommendation adopted</u>, 2012 WL 966029 (D. Me. March 21, 2012). The court dismissed the case on the ground that the plaintiff lacked prudential standing, holding that plaintiff's claim of an "aesthetic injury" did not fall within the zone of interests of the Equal Protection Clause. Alta claims Plaintiffs in the instant case similarly lack standing because they also assert only a "kind of aesthetic or recreational interest" which is not deserving of protection under the Equal Protection Clause. (Alta's Mot. to Dismiss at 9.)

Plaintiffs respond by asserting that they are merely asking for equal treatment under what they claim is a law, that directly affects them, i.e., the snowboard ban. They claim that the Equal Protection Clause is focused on unfair treatment under the law regardless of the nature of the underlying activity.

On this point, the court agrees with the Plaintiffs. As the court reviews the case law from the Supreme Court and the Tenth Circuit it is clear that the Equal Protection Clause has been

interpreted to require that any action that can be properly attributed to the government must be applied equally to all persons, subject to the various levels of scrutiny explained above. The focus is on the way the state action treats people, not on the relative seriousness of the activities subject to the action. While it is true Plaintiffs here present a unique case (neither the parties nor the court have found anything remotely similar), their legal theory appears sound. They only seek to prove that Alta's decision to ban snowboarders was a decision attributable to the government that treats them differently than other people and that it has no rational basis. Plaintiffs' connection to the rule is direct (i.e., they are banned from using their snowboards at Alta), placing them in a significantly different position than the plaintiff in Maine whose complaint was based only on an alteration of the view she had of the western hills. As such, the court finds Plaintiffs have prudential standing to bring this case.

(ii) <u>The Property Clause (Article IV)</u>

The Federal Defendants claim that Plaintiffs' case does not qualify for judicial review under the Equal Protection Clause because even if the decision to ban snowboarding at Alta could fairly be attributed to the government, "the law does not recognize a 'class-of-one' claim challenging the types of recreational activities that the United States allows to occur on its land." (United States' Mot. to Dismiss at 15.)

The Federal Defendants claim that where the government is operating as a "proprietor," as opposed to a "regulator," an equal protection challenge is not legally cognizable, citing to <u>Engquist v. Oregon Dep't of Agriculture</u>, 553 U.S. 591 (2008).

In <u>Engquist</u>, the plaintiff was a disgruntled government employee who sued under the

Equal Protection Clause, claiming unequal treatment when the government terminated her

employment "for arbitrary, vindictive, or malicious reasons." Id. at 595. The Court held:

> [T]he core concern of the Equal Protection Clause as a shield against arbitrary
> classifications, combined with unique considerations applicable when the
> government acts as employer as opposed to sovereign, lead us to conclude that the
> class-of-one theory of equal protection does not apply in the public employment
> context.

Id. at 598.

The Court reasoned that it has "long held the view that there is a crucial difference, with

respect to constitutional analysis, between the government exercising "the power to regulate or

license, as lawmaker," and the government acting "as proprietor, to manage [its] internal

operation." Id. When the government acts as a "proprietor," it "has far broader powers than

does the government as sovereign." Id. In this "proprietor" role, the government must engage in

"discretionary decisionmaking based on a vast array of subjective, individualized assessments."

Id. at 603. Given the need for discretion when acting as a proprietor, "the rule that people should

be 'treated alike, under like circumstances and conditions' is not violated when one person is

treated differently from other because treating like individuals differently *is an accepted

consequence of the discretion granted.*" Id. (emphasis added). Given the proprietary discretion

the government has in such contexts, an equal protection claim is not legally cognizable.

As pointed out by the government in its brief, the Supreme Court recognized the

"common-sense realization that government offices could not function if every employment

decision became a constitutional matter. . . ." Id. at 607. This is because "ratifying a class-of-

one theory of equal protection in the context of public employment would impermissibly

'constitutionalize the employee grievance,'" which would inappropriately invest federal courts

with power that the Constitution never intended.  Id. at 609 (quoting Connick v. Myers, 461 U.S.

138, 154 (1983)).

The Federal Defendants claim that the reasoning of Engquist is applicable in this case,

and even more so, because the Constitution, in Article IV, specifically entrusts the management

of the public land exclusively to the United States, making it a proprietor with plenary discretion

on its land.  The Federal Defendants claim it would be a violation of the separation of powers

doctrine to allow equal protection challenge in the courts to review the discretionary acts of the

other branches of government in administering their constitutional responsibility regarding the

management of the public lands.  The court agrees with the Federal Defendants.

The Property Clause states as follows:

> The Congress shall have Power to dispose of and make all needful Rules and
> Regulations respecting the Territory or other Property belonging to the United
> States; and nothing in this Constitution shall be so construed as to Prejudice and
> Claims of the United States, or of any particular State.

Art. IV, § 3, cl. 2.

In Light v. United States, 220 U.S. 523 (1911), the United States Supreme Court

observed that the Property Clause "is a grant of power to the United States of control of its

property," and that "[t]he Government has with respect to its own land the rights of an ordinary

proprietor . . . .  It may deal with such lands precisely as an ordinary individual may deal with his

farming property."  Id. at 536-37.

Accordingly, the Federal Defendants assert:

Consequently, under the Constitution, "[t]he United States can prohibit absolutely

or fix the terms on which its property may be used." Id.  But, unlike public employment, "[t]he power over the public land thus entrusted to Congress is without limitations."  Kleppe v. New Mexico, 426 U.S. 529, 539 (1976).  Thus, as a proprietor over its own property, the United States' power is plenary.

As a "proprietor" whose power over its property is "without limitations," the United States engages in "discretionary decisionmaking based on a vast array of subjective, individualized assessments" as to what uses are permitted on its land.  Endquist, 553 U.S. at 603.  The United States makes individualized assessments as to which lands it should make available for mineral leasing, which lands should be free from roads or motorized use, which lands allow hunting and fishing, and which lands should preclude them.  Not only does the United States make individualized assessments about the general types of activities that may occur on federal land, but the United States also decides to allow or exclude certain activities within specific area of land.  For example, the United States may decide to allow fishing within a wildlife refuge, but it may choose to limit particular waters within that refuge only to fly fishing, which necessarily excludes other types of fishing.  See, e.g., http//www.fws.gov/nwrs/threecolumn. aspx?id=2147516841 (limiting certain waters in the National Elk Refuge to fly fishing).  Given that the United States' limitless discretion to determine what types of activities can occur on its own land, "the rule that people should be 'treated alike, under like circumstances and conditions' is not violated when [snowboarders are] treated differently from [skiers] because treating like individuals differently *is an accepted consequence of the discretion granted.* Engquist, 553 U.S. at 603 (emphasis added).

(United States' Mot. to Dismiss at 17-18.)

Regarding separation of powers, the Federal Defendants continue their argument as

follows:

[S]eparation of powers principles preclude the judiciary from recognizing a "class of one" claim in the context of challenging uses of federal land.  As a practical matter, the United States makes thousands of decisions about which uses and activities are allowed or are not allowed on its vast land holdings.  If courts were to recognize a "class of one" challenge in the context of land use, then every person whose desired use of federal land was precluded could raise a Fifth Amendment equal protection claim under the Constitution seeking a rational-basis review for each decision.  For example, "fishermen who cast from the bank" – like Plaintiffs who "stand sideways on a single snowboard" – could file a complaint claiming an interest in fishing the waters in the National Elk Refuge, which the United States has made available only to fly-fishing.  These bank-

casting fishermen, like Plaintiffs here, could argue that there is no rational basis for excluding bank-casting fishermen and that their exclusion is evidence of animus on the part of the United States and fly fishermen. The United States would then be forced to engage in litigation for this and any other land use decision it has made that arguably limits or entirely excludes a use of its own property. Like the Supreme Court in <u>Engquist</u>, this court should be "guided . . . by the common sense realization that government [land management] offices could not function if every [land use] decision became a constitutional matter." <u>Engquist</u>, 553 U.S. at 607. Indeed, if Plaintiffs' "class of one" theory were to apply here, then the federal judiciary would become the ultimate authority as to what activities the United States should allow on its own land instead of Congress and the agencies to which Congress has delegated its authority.

(United States' Mot. to Dismiss at 18-19.)

The court agrees with the Federal Defendants and finds that the reasoning of <u>Engquist</u> that pertained to public employment should be applied to the government's plenary power to make discretionary decisions regarding the management of public lands. In doing so, it should be pointed out, Plaintiffs are certainly not prevented from providing input to the government before final decisions are made; nor are Plaintiffs, or any one else, deprived of meaningful opportunities to seek judicial review of such decisions in the courts. Congress has imposed many land-use obligations on those agencies entrusted with the administration of the public lands which include seeking public input before decisions are made and actions are taken. Regarding judicial review, Congress passed the Administrative Procedures Act specifically to allow those adversely affected by the government's land-use decisions to seek judicial review. In that regard, the court adopts and agrees with the Federal Defendants' following statement in its reply brief:

By bringing their class-of-one/class-based equal protection claim here, Plaintiffs, in effect, ask this court to ignore the plain language of the Property Clause, the Supreme Court's interpretation thereof, and the law that Congress has enacted

governing the Forest Service's land-management actions and the Judicial
Branch's review of those actions.  Plaintiffs contend that if a federal decision
precludes their desired activity on federal land and allows what Plaintiffs deem to
be similarly-situated activity, then Plaintiffs should be allowed to bring a class-of-
one/class-based action in which they can obtain discovery and a jury trial to
determine whether the Forest Service's decision is "rational" by a preponderance
of the evidence without according any deference to the Forest Service's decision.
Allowing Plaintiffs to bypass the procedure that Congress has provided and to
deny the Executive Branch agencies the substantial deference to which they are
entitled offends the Separation of Powers Doctrine.  In effect, whether
characterized as a class-of-one or as a class-based theory, Plaintiffs' challenge
would "turn[] even quotidian exercises of government discretion into
constitutional causes," and would improperly "constitute the federal courts as
general-purpose second-guessers of the reasonableness of a broad area of" land-
use decisionmaking, which the Constitution vests in Congress and which
Congress has delegated to the Executive Branch.  Kansas Penn., 656 F.3d at 1216.
Such a scenario would "subject nearly all [federal land-use] decisions to
constitutional review in federal court and deny [federal land-management
agencies] the critical discretion they need to effectively perform their duties."  Id.
at 1218.  Indeed, "[t]he Equal Protection Clause does not require this
displacement of managerial discretion by judicial supervision."  Engquist, 553
U.S. at 608-09.

(United States' Reply at 22-23.)

The court finds, therefore, that, even assuming state action, the present case must be

dismissed because it does not appropriately qualify for protection as a direct challenge to

government action under the Equal Protection Clause.

**Rational Basis**

Having determined that Plaintiffs' case should be dismissed because (1) as a matter of

law there is no state action, and (2) even if there were state action, this case deals with the

government's discretionary authority in administering the public lands and is therefore not

proper under the Equal Protection Clause, the court nevertheless, in the alternative, will address

the question whether Plaintiffs' Complaint is sufficient to meet a rational basis standard of

review.

Defendants claim in their motions to dismiss that Plaintiffs' Complaint does not present a plausible claim that the decision to ban snowboards lacks a rational basis. They correctly point out that Plaintiffs' action, whether styled as a "class-of-one" action or a "class-based" action, requires Plaintiffs to show that (1) they were treated differently than others who are similarly situated in every material respect, and (2) this difference in treatment was without rational basis, that is, the government's action was irrational and abusive. (United States' Mot. to Dismiss at 20.) They also point out that in class-of-one cases, the Tenth Circuit has taken a cautious approach to avoid turning the courts into inappropriate "second-guessers" of all executive branch decisions, as stated in Jennings v. City of Stillwater, 383 F.3d 1199 (10th Cir. 2004):

> [T]he concept of a class-of-one equal protection claim could effectively provide a federal cause of action for review of almost every executive and administrative decision made by state actors. It is always possible for persons aggrieved by government action to allege, and almost always possible to produce evidence, that they were treated differently from others, with regard to everything from zoning to licensing to speeding to tax evaluation. It would become the task of the federal courts and juries, then, to inquire into the grounds for differential treatment and to decide whether those grounds were sufficiently reasonable to satisfy equal protection review. This would constitute the federal courts as general-purpose second-guessers of the reasonableness of broad areas of state and local decision making: a role that is both ill-suited to the federal courts and offensive to state and local autonomy in our federal system.

Jennings, 383 F.3d at 1210-11.

In a similar vein, in Kansas Penn Gaming, LLC v. Collins, 656 F.3d 1210 (10th Cir. 2011), the Tenth Circuit stated:

> These concerns are magnified with challenges to low-level government decision-making which often involves a great deal of discretion. The latitude afforded police officers, IRS agents, university administrators, zoning officials, and other,

similar government actors necessarily results in a sizeable amount of random variation in outcome. If even innocuous inconsistencies gave rise to equal protection litigation, government action would be paralyzed.

Id. at 1216-17.

In accordance with such guidance from the Tenth Circuit, with special emphasis on the Kansas Penn case, the court will proceed with the required caution and hold Plaintiffs' pleading to the exacting standards outlined in that case as well as the relatively recent cases of Bell Atl. Corp. v. Twombly, 550 U.S. 544 (2007), and Ashcroft v. Iqbal, 556 U.S. 662 (2009), from the United States Supreme Court. Twombly and Iqbal make it clear that Plaintiffs are required to plead sufficient facts to make their legal claims plausible rather than simply conceivable. Those cases also make it clear that allegations that are merely conclusory will not be allowed to advance a proposition for which there is insufficient factual support. Defendants correctly point out that the rational basis test requires (1) a strong presumption that the government's action has a rational basis, (2) the burden of overcoming the presumption rests with the Plaintiff, and (3) that an equal protection claim will fail "if there is any reasonably conceivable state of facts that could provide a rational basis for the classification." (United States' Mot. to Dismiss at 22 (quoting Teigen v. Renfrow, 511 F.3d 1072, 1083 (10th Cir. 2007).) The Federal Defendants cite abundant Tenth Circuit authority for each of these propositions. (Id. at 20-23.)

Against this standard, Plaintiffs' Complaint fails to state a proper claim for relief.[5] The Plaintiffs' Complaint, itself, standing alone, not only fails to satisfy the requirement of

---

[5] In reaching its decision, the court is assuming that Plaintiffs can meet the pleading requirements to show that Plaintiffs are similarly situated in all material respects to other people. This proposition, however, is vigorously contested by the parties and far from clear.

presenting a viable, plausible, claim that the alleged government action was without any rational

basis, it actually does the opposite. By its allegations alone, the Complaint reveals that Alta's

decision to ban snowboards had a rational basis. Among other reasons behind Alta's decision,

the Complaint itself observed the following:

1. Alta's chosen business model caters to a skier-only market. (Compl. ¶¶ 63 & 74.)

2. Alta believes its terrain is not conducive to snowboarders. (Id. ¶ 74.)

3. Surveys have confirmed to Alta that a large number of skiers prefer Alta because of its business model to prohibit snowboards. (Id. ¶ 79.)

4. Businesses in and surrounding Alta support a skiers only destination at Alta. (Id.)

5. Snowboarders have a different "blind spot" than skiers and snowboarders face differently than skiers, both of which cause concerns about safety. This is based, among other anecdotes provided in the Complaint, on skiers' claims that snowboarders "cut you off," and "get in the way," and that without snowboards the "entire experience" was "more peaceful, *safe*, and enjoyable." (Id. ¶¶ 73, 83-84.)

6. Snowboarders attack the snow differently than skiers ("So nice not to hear the grinding sound . . . "). Whereas skiers ski around moguls, snowboarders cut them off. (Id. ¶ 84.)

These reasons alone satisfy a rational basis. A business, even a skiing business on Forest

Service property, enjoys the right to manage its business pursuant to its preferred business

model, even if others disagree with it. In addition to the rational bases evident from the

Complaint itself, which are based on business, safety, demographics, terrain, and the preference

of customers, Alta and the Federal Defendants present other rational reasons for the decision to

ban snowboards in their briefs, such as a desire to provide unique kinds of recreational

experiences on Forest Service property, under a multiple use policy, but the court need look no

further than the Complaint and simple common sense to find that the Plaintiffs have failed to plead a plausible claim for relief under the rational basis standard.

**Animus**

In their Complaint, their briefs and oral argument Plaintiffs base their case to a significant degree on allegations of animus. They claim that Alta's decision was based on Alta's belief that snowboarders are undesirable people with obnoxious habits and characteristics and that this attitude on the part of Alta was the primary, if not the sole, reason for the snowboard ban. In essence, it appears they claim that the restriction was against snowboarders, as people, and not merely an equipment restriction. They allege that Alta is mistaken in many of its beliefs about snowboarders and their culture and that such animus is not only unfair but also unlawful under the Equal Protection Clause. The Plaintiffs seem to believe that if the animus they allege can be proven, they are entitled to the injunctive relief they seek. In this regard, however, the Plaintiffs' view of Equal Protection law is misplaced and mistaken. As Defendants point out in their briefing, animus of the type alleged by Plaintiffs does not become a relevant consideration in determining whether there exists a rational basis for government action except (1) in those cases where the animus is based on a protected status (i.e., race, alienage or national origin) or a fundamental right (e.g., the right to vote) or (2) when there is *no* rational basis and animus appears to be the *only* reason for the discriminatory state action. See, e.g., U.S. Dep't of Agric. v. Moreno, 413 U.S. 528 (1973).

U.S. Department of Agriculture v. Moreno, dealt with a provision in the food stamp program that excluded participation by households of unrelated persons. The provision was

found by the United States Supreme Court to be in violation of the Equal Protection Clause as irrational. The Court could not discern any rational basis in the legislative history to support the discrimination. What they did find was an indication that "the amendment was intended to prevent so-called 'hippies' and 'hippie communes' from participating in the food stamp program." 413 U.S. 528, 534 (1973). In recognizing that this intention to exclude, standing alone, could not support a rational basis, the Court stated:

> The challenged classification clearly cannot be sustained by reference to this congressional purpose. For if the constitutional conception of 'equal protection of the laws' means anything, it must at the very least mean that a bare congressional desire to harm a politically unpopular group cannot constitute a legitimate governmental interest. As a result, "(a) purpose to discriminate against hippies cannot, *in and of itself* and without reference to (some independent) considerations in the public interest, justify the 1971 amendment."

Id. at 534-35 (quoting 345 F. Supp. 310, 314 n.11 (1972)) (emphasis added); see also City of Cleburne, Tex. v. Cleburne Living Ctr., 473 U.S. 432 (1985).

In other words, if there is an independent basis (other than animus) to support a finding of rational basis it does not matter for Equal Protection Clause analysis purposes that animus may also have influenced the decision. See generally Kansas Penn Gaming, LLC v. Collins, 656 F.3d 1210 (10th Cir. 2011). The requirement under the law is that there is some rational basis for the action taken, not that there is an absence of animus. See Flying J, Inc. v. City of New Haven, 549 F.3d 538, 547 (7th Cir. 2008) ("It is only when courts can hypothesize no rational basis for the action that allegations of animus come into play."); Powers v. Harris, 379 F.3d 1208, 1224 (10th Cir. 2004) (rejecting equal protection claim because "we have conceived of a legitimate state interest other than a 'bare desire to harm'").

Accordingly, in this case where, as explained above, there are multiple grounds supporting a rational basis for Alta's skiers-only equipment restriction, Plaintiffs allegations of animus are irrelevant to the discussion.

Furthermore, even if Plaintiffs' allegations of animus were relevant, the court nevertheless finds them inadequate under <u>Twombly</u> and <u>Iqbal</u>.  First, the allegations consist almost entirely of anecdotes based on second and third-hand hearsay from YouTube videos and the like, with virtually no direct evidence linking Alta's decision-makers to the alleged animus, hardly the kind of evidence necessary to present a plausible case.  Second, it is undeniable that Alta's snowboard policy bans only snowboards from Alta, not people.  It is an equipment restriction only.  Plaintiffs concede that they are welcome at Alta so long as they, just like sledders and snowshoers, or any other person, abide by the skiers-only policy.  There is no ban against Plaintiffs as people, even if, as Plaintiffs allege, Alta's management personnel finds, or at one time found, them to have undesirable personal characteristics.

For these reasons, the court finds that, even if relevant, there are insufficient facts to support any plausible claim that Alta or the Forest Service acted out of animus to remove Plaintiffs from the resort.

<u>**SUMMARY AND CONCLUSION**</u>

To put it simply, Plaintiffs' case fails because there is no law to support it.  The Equal Protection Clause is not a general fairness law that allows everyone who feels discriminated against to bring an action in federal court.  The state action requirement is important because it ensures that the Constitution will be enforced only against those actions that can fairly be

attributed to the government.  In modern society, it is no exaggeration to say the government is everywhere; it taxes; it owns property; it prosecutes; it regulates the environment, and all of the instrumentalities of commerce.  But as vast as it is, the people of America and all of the private businesses they run are still granted tremendous amounts of freedom.  If the state action necessary to support an Equal Protection claim were allowed on any connection between private enterprise and the ever-present government, it is hard to imagine a case that would not qualify.  If the taxing authority of the government alone, for example, or the government's granting of leases to private companies on federal lands, as is the case here, were deemed enough to support an Equal Protection lawsuit in federal court regarding virtually any decision the private company makes, not only would the courts potentially be burdened by scores of cases, but the judiciary would also be placed in a role for which it is not constitutionally designed.  This is not what the Fourteenth Amendment was anticipated to reach.

Even where there is state action, courts must observe the history of the Equal Protection Clause and the judicial precedent that defines the extent of its reach.  This history shows that the Equal Protection Clause was enacted, and has been primarily used, over the past 150 years, to protect against discrimination by the government based on immutable (or nearly immutable) characteristics such as race, national origin and alienage.  But even government actions that discriminate on these characteristics are not absolutely prohibited.  Rather, they are held to a strict scrutiny test and will only be allowed as a basis for government action if the government can show a compelling state interest.  As important cases such as <u>Brown v. Board of Education</u> show, when the discrimination rests on something immutable like race, a sufficient compelling

state interest can almost never be shown, and the law is found to violate the Constitution for that reason. But for all other, non-immutable, characteristics that make people different from each other and which often form the basis for state laws or other official government action, the test is vastly different; there is no presumption against such laws, in fact there is a presumption in their favor. This is, no doubt, a common-sense recognition that all laws discriminate in one way or another, which is the very nature of laws and regulations. As to this large body of laws that do not qualify for heightened scrutiny, all that is required for them to be found in compliance with the Constitution is that the government has a rational basis for its actions. This standard, in direct contrast to the strict scrutiny standard, is quite easy to satisfy, which leaves the disputes and disagreements about these laws (whether they are good, or bad, or should be changed, etc.) a matter of debate and discussion in the legislative and executive branches of government where they belong.

There are many forums Plaintiffs can resort to in an attempt to accomplish their goal of snowboarding down the Baldy Chutes at Alta. Seeking an injunction from this court is not one of them.

For the reasons stated above, the Plaintiffs' Complaint is dismissed for failure to state a claim within the zone of interests protected by the Equal Protection Clause because (1) there is no state action, (2) even if there were state action, the claims are directed at the Forest Service's discretionary decisions made pursuant to the United States Constitution's Property Clause, and (3) even if there were state action and this case was not barred by the Property Clause, the Complaint fails to plead a plausible claim for relief under rational basis analysis.

The Federal Defendants' Motion to Dismiss based on the Property Clause is GRANTED, with prejudice; the motions are otherwise granted without prejudice.

IT IS SO ORDERED.

DATED this 23rd day of September, 2014.

_____
Dee Benson
United States District Judge