**FILED**
**United States Court of Appeals**
**Tenth Circuit**

<u>PUBLISH</u>

**UNITED STATES COURT OF APPEALS**

**FOR THE TENTH CIRCUIT**

**April 19, 2016**

**Elisabeth A. Shumaker**
**Clerk of Court**

_____

WASATCH EQUALITY, a Utah nonprofit
corporation; RICK ALDEN, an individual;
DREW HICKEN, an individual; BJORN
LEINES, an individual; RICHARD
VARGA, an individual,

       Plaintiffs - Appellants,

v.

ALTA SKI LIFTS COMPANY, a Utah
corporation, d/b/a Alta Ski Area; UNITED
STATES FOREST SERVICE, an agency
of the United States Department of
Agriculture; DAVID WHITTEKIEND, in
his official capacity as Forest Service
Supervisor in the Wasatch-Cache National
Forest,

       Defendants - Appellees.

No. 14-4152

_____

**Appeal from the United States District Court**
**for the District of Utah**
**(D.C. No. 2:14-CV-00026-DB)**

_____

Jonathan R. Schofield, Parr Brown Gee & Loveless, Salt Lake City, Utah (Rachel L.
Wertheimer, and Michael S. Anderson, Parr Brown Gee & Loveless, Salt Lake City,
Utah, with him on the briefs), for Wasatch Equality, Rick Alden, Drew Hicken, Bjorn
Leines, Richard Varga, Plaintiffs-Appellants.

Frederick R. Thaler, Ray Quinney & Nebeker, P.C., Salt Lake City, Utah (Robert O. Rice
and Calvin R. Winder, Ray Quinney & Nebeker, P.C., Salt Lake City, Utah, with him on
the briefs), for Alta Ski Lifts Company, Defendant-Appellee.

Jared C. Bennett, Assistant United States Attorney, Salt Lake City, Utah (John W. Huber, United States Attorney, Carlie Christensen, Assistant United States Attorney, Salt Lake City, Utah, with him on the briefs), for United States Forest Service; David Whittekiend, Defendants-Appellees.

_____

Before **HARTZ**, **PHILLIPS**, and **MORITZ**, Circuit Judges.

_____

**MORITZ**, Circuit Judge.

_____

Wasatch Equality and four snowboarders (collectively, Wasatch) brought suit challenging a snowboard ban at Alta Ski Area in Utah. In its complaint, Wasatch alleged the ban unconstitutionally discriminates against snowboarders and denies them equal protection of the law in violation of the Fifth and Fourteenth Amendments to the United States Constitution.

Recognizing that private action won't sustain a civil rights complaint, Wasatch further alleged the ban constitutes "state action" because Alta operates its ski resort on federal land via a permit issued by the United States Forest Service—a permit that requires the Forest Service to annually review and approve Alta's site management plan. The district court disagreed, and dismissed this case for failure to identify a state action. Because we agree Wasatch hasn't plausibly established that the snowboard ban constitutes state action, we affirm.

## BACKGROUND

Alta Ski Lifts Company is a privately owned Utah corporation that operates Alta Ski Area in the Wasatch-Cache National Forest near Salt Lake City. Alta Ski Area covers 2130 acres and about 1800 of those acres are located on Forest Service

land. Alta is one of 120 ski areas nationwide that operates on federal land via a Forest Service Ski Area Term Special Use Permit. Under the terms of its permit, Alta pays the Forest Service a usage fee each year, calculated as a percentage of Alta's lift-ticket sales and ski-school operations. For 2009-2012, the usage fee ranged from $304,396 to $473,792. All told, Alta's usage fee accounts for less than 0.1% of the Forest Service's annual budget.

Under the terms of the permit, the Forest Service reviews and approves Alta's winter site operation plan each year. This site plan includes a hill management section detailing Alta's management decisions regarding its ski runs. In relevant part, the hill management section grants Alta the right to exclude any skiing device from its ski runs that it deems causes risk to the user of the device or other skiers, causes undue damage to the quality of the snow, or is inconsistent with Alta's business management decisions. Under the authority of this section, Alta bans snowboarding from its ski runs and markets itself as a skier-only mountain. It is one of three ski resorts in the country that bans snowboarding, and the only one of the three operating on federal land.

Plaintiff Wasatch Equality is a Utah nonprofit corporation "formed for the purpose of, among other things, promoting equality and harmony among skiers and snowboarders, as well as promoting equal access and fair use of public lands by the public, regardless of whether snowboarding or skiing." Joint App. 14-15. Plaintiffs Bjorn Leines—a professional snowboarder—and Rick Alden, Drew Hicken, and Richard Varga—Utah residents—are all snowboarders who use neighboring resorts

3

and who wish to snowboard at Alta. Wasatch brought suit challenging Alta's snowboard ban as violating the Equal Protection Clause of the Fourteenth Amendment as applied to the federal government through the Fifth Amendment's Due Process Clause.

According to Wasatch's complaint, skiers and snowboarders have harbored animosity and hostility towards each other since the snowboard's introduction. Wasatch further posits that Alta's snowboarding ban resulted from Alta's animus towards snowboarders as a group and the ban isn't supported by a rational basis. In support, Wasatch points to Alta's website and trail maps—both of which prominently state that "Alta is a skiers' mountain" and that "snowboarding is not allowed"—and to signs in Alta's ticket windows that declare in large, bold letters, "NO SNOWBOARDS." Joint App. 22-23. Wasatch's complaint also quoted Gus Gilman, Director of Alta Ski Patrol, as saying that Alta maintains its snowboard ban because Alta "sort of [has] a customer base of people who prefer to ski where there's no snowboarding." *Id.* at 24. And the complaint quoted Chic Morton, Alta's General Manager, as saying "anyone who uses the words rip, tear, or shred will never be welcome at Alta," and that "as long as [he was] alive snowboarders will never be allowed at Alta." *Id.* at 25.[1]

---

[1] Wasatch's complaint further alleged that Alta serves as a conduit for its customers' animus towards snowboarders. For example, the complaint alleged that Alta skiers verbally assaulted Wasatch members on multiple occasions. The complaint also quotes statements made by Alta skiers recorded in videos in which they called snowboarders profane names and declared that snowboarders need to "stay the hell off this mountain" and "get their own mountain." Joint App. 27.

Based on the Forest Service's annual approval of Alta's winter site operation plan and its receipt of an annual usage fee, the complaint attributed the snowboard ban to the Forest Service. Because Alta has no rational basis for the ban, Wasatch argued, the ban violates its equal protection rights. Wasatch thus sought a declaration that Alta's snowboard ban is unconstitutional and requested an injunction preventing Alta from enforcing its anti-snowboard policy.

Alta and the Forest Service separately moved to dismiss the case under Federal Rule of Civil Procedure 12(b)(6) for failure to state a claim. In pertinent part, Alta and the Forest Service argued the Equal Protection Clause didn't apply to Wasatch's claims because the snowboard ban isn't state action.

In granting Alta's and the Forest Service's motions to dismiss, the district court found that the Forest Service did nothing to influence Alta's decision to ban snowboards and the Forest Service's receipt of a usage fee each year didn't sufficiently involve the government to otherwise attribute the ban to the government. Wasatch appeals, arguing the district court erred by failing to accept as true the allegations in the complaint and grant all reasonable inferences in favor of Wasatch, which led to the court's erroneous conclusion that no state action exists.

For the reasons discussed below, we agree Wasatch's complaint hasn't plausibly established state action, and we affirm the dismissal of this action.[2]

---

[2] Because we conclude Wasatch's Fourteenth Amendment claim fails in the absence of state action, we decline to address its challenges to the district court's alternative basis for dismissal—that Alta has a rational basis for the snowboard ban and that the Property Clause barred review of Wasatch's Equal Protection claim.

### DISCUSSION

We "review de novo the grant of a Rule 12(b)(6) motion to dismiss for failure to state a claim," *Gee v. Pacheco*, 627 F.3d 1178, 1183 (10th Cir. 2010), and uphold the district court's dismissal if the complaint doesn't "contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face,'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). Although "the sufficiency of a complaint must rest on its contents alone[,] [t]here are exceptions to this restriction on what the court can consider, but they are quite limited: (1) documents that the complaint incorporates by reference; (2) documents referred to in the complaint if the documents are central to the plaintiff's claim and the parties do not dispute the documents' authenticity; and (3) matters of which a court may take judicial notice." *Gee*, 627 F.3d at 1186 (citations and internal quotation marks omitted).

In reviewing the complaint, we "accept all facts pleaded by the non-moving party as true and grant all reasonable inferences from the pleadings in favor of the same," *Colony Ins. Co. v. Burke*, 698 F.3d 1222, 1228 (10th Cir. 2012) (citation omitted), but we don't accept the nonmoving party's legal conclusions as true. *Iqbal*, 556 U.S. at 678. "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.*

Applying these principles here leads us to ask whether Wasatch's complaint sufficiently pleaded facts that, if accepted as true, plausibly entitle it to relief under the Equal Protection Clause of the Fourteenth Amendment. That clause provides that

6

no *state* shall "deny to any person within its jurisdiction the equal protection of the laws." U.S. Const. amend. XIV, § 1.[3] "That language establishes an 'essential dichotomy' between governmental action, which is subject to scrutiny under the Fourteenth Amendment, and private conduct, which 'however discriminatory or wrongful,' is not subject to the Fourteenth Amendment's prohibitions." *Gallagher v. Neil Young Freedom Concert*, 49 F.3d 1442, 1446 (10th Cir. 1995) (quoting *Jackson v. Metro. Edison Co.*, 419 U.S. 345, 349 (1974)).

We evaluate whether challenged conduct constitutes state action using a flexible approach. *See id.* at 1447. For example, in some instances this court has applied a symbiotic-relationship test, asking "whether the state has 'so far insinuated itself into a position of interdependence' with the private party that there is a 'symbiotic relationship' between them." *Id.* (first quoting *Burton v. Wilmington Parking Auth.*, 365 U.S. 715, 725 (1961); and then quoting *Moose Lodge No. 107 v. Irvis*, 407 U.S. 163, 175 (1972)). In others, this court has applied a nexus test, asking "whether there is a sufficiently close nexus between the State and the challenged action of the regulated entity so that the action of the latter may be fairly treated as that of the State itself." *Id.* (quoting *Jackson*, 419 U.S. at 351). In still other instances, this court has applied a joint-action test, asking whether the "private party

---

[3] Although the Fourteenth Amendment guarantees equal protection under state laws, the Supreme Court has interpreted the Due Process Clause of the Fifth Amendment to impose an identical requirement on the federal government. *See Adarand Constructors, Inc. v. Pena*, 515 U.S. 200, 217-18 (1995). As a federal agency, the Forest Service is thus subject to the requirements of the Equal Protection Clause as applied to the federal government through the Fifth Amendment's Due Process Clause. *See id.*

is 'a willful participant in joint activity with the State or its agents.'" *Id.* (quoting *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 152 (1970)). And finally, this court has applied a public-function test, asking whether the private entity exercises "powers traditionally exclusively reserved to the State." *Id.* (quoting *Jackson*, 419 U.S. at 352). Regardless of the label, however, the underlying question for each test is whether "'the conduct allegedly causing the deprivation of a federal right' must be 'fairly attributable to the State.'" *Id.* (quoting *Lugar v. Edmondson Oil Co.*, 457 U.S. 922, 937 (1982)).

In an effort to establish state action, Wasatch's complaint pleaded the following facts: (1) the Forest Service owns 85% (1802.7 acres) of the land comprising Alta's ski area; (2) Alta operates under a Forest Service Ski Area Term Special Use Permit; (3) the Forest Service annually reviews and approves Alta's winter site operation plan, under which Alta retains the right to exclude devices from its ski runs; (4) the Forest Service approves Alta's use of the land including signage, ski routes, avalanche control, and general safety; (5) the Forest Service receives a fee from Alta each year based on a percentage of revenues from lift-ticket sales and ski-school operations; (6) Alta's trail map includes both Alta and Forest Service logos and says snowboarding is not allowed; and (7) Alta's general manager publicly stated Alta prohibits snowboards because, among other reasons, "the Forest Service says it's OK." Joint App. 30.[4]

---

[4] Wasatch's complaint also asserts that snowboarders are "not welcome" by the Forest Service and the Forest Service "approv[es] and enforce[s] . . . Alta's anti-

In its opening brief, Wasatch characterizes the relationship between Alta and the Forest Service as "complicated and entangled," and it asserts that it has pleaded facts sufficient to "establish state action under any applicable test." Aplt. Br. 22, 27. However, Wasatch devotes considerable discussion to the symbiotic-relationship test. To establish state action under that test, Wasatch's complaint must plausibly establish that the Forest Service "'has so far insinuated itself into a position of interdependence' with [Alta] that 'it must be recognized as a joint participant in the challenged activity.'" *Gallagher*, 49 F.3d at 1451 (quoting *Burton*, 365 U.S. at 725). Wasatch asserts this relationship exists here, and relies heavily on the Supreme Court's holding in *Burton* and this court's holding in *Milo v. Cushing Municipal Hospital*, 861 F.2d 1194 (10th Cir. 1988), for support.

In *Burton*, a restaurant leased commercial space in a parking facility owned by the state parking authority and refused service to patrons based on their race. 365 U.S. at 720. A state statute created the parking authority to provide adequate parking facilities in view of a parking crisis, and the Court found the parking authority couldn't have constructed the parking structure at issue but for the lease because anticipated bond proceeds and parking revenues would be insufficient to cover the cost of construction. *Id.* at 717-19. Because the restaurant was thus an "indispensable

---

snowboarder policy." Joint App. 11-12. But we won't give any weight to these "'naked assertion[s]' devoid of 'further factual enhancement.'" *See Iqbal*, 556 U.S. at 678 (alteration in original) (quoting *Twombly*, 550 U.S. at 557). Similarly, we don't accept as true for purposes of a Rule 12(b)(6) motion the complaint's legal conclusions that the Forest Service discriminates against snowboarders and the Forest Service "has entered into a 'joint enterprise' and 'symbiotic relationship' with Alta." Joint App. 11, 21; *see Iqbal*, 556 U.S. at 678.

part" of the parking authority achieving its purpose, and because "the peculiar relationship of the restaurant to the parking facility in which it is located confers on each an incidental variety of mutual benefits," the Court attributed the restaurant's actions to the state. *Id.* at 723-24.

Similarly, in *Milo* a city "substantially participated in the funding, creation, and financial structure of [a] hospital" and then leased the hospital to a public trust created under state law. 861 F.2d at 1195-96. The public trust in turn entered into an operating agreement with a private corporation to manage the hospital, including the handling of medical staff privilege and discipline matters. *Id.* at 1195. After the hospital summarily suspended two physicians, the physicians brought suit against the hospital and the private corporation asserting First and Fourteenth Amendment violations. *Id.* Relying on *Burton*, this court concluded the hospital was a public institution because "merely contracting [with the private entity] for day-to-day management" didn't insulate the state actors from liability, and thus the management actions constituted state action for purposes of a 42 U.S.C. § 1983 claim. *Id.* at 1196-97.

Wasatch asserts the facts asserted in its complaint regarding the relationship between Alta and the Forest Service are akin to the facts established in *Burton* and *Milo*. Namely, Wasatch argues that "not only does the discrimination under long-term lease of public property result in a significant amount of revenue for both Alta and the Government, Defendants openly market that discrimination in an attempt to increase revenue." Aplt. Br. 29. Wasatch further argues that the Forest Service

10

"depends on Alta to operate the resort on National Forest land for the public, as set forth by the Government's special-use permitting scheme," and that without Alta's existence, "the Government would be forced to either assume or abandon the operations or enter into an identical arrangement for another entity like Alta to assume operations." Aplt. Br. 30.

But the facts alleged here are far different than those asserted in *Burton* or *Milo*. Unlike the restaurant in *Burton*, Alta Ski Area is not "indispensable" to the Forest Service's purpose. The Forest Service, by virtue of the Alta permit, does receive approximately $400,000 each year in fees, but this amounts to only 0.1% of its annual budget.[5] Indeed, Alta is only one of more than 120 ski resorts that operate under a similar permit. *See* S. Rep. No. 112-55, at 2 (2011). Thus, the existence, or non-existence, of one of these approximately 120 ski resorts isn't indispensable to the Forest Service's purpose.

Nor does Wasatch allege in its complaint that the Forest Service participated in the funding, creation, and financial structure of the ski area and then simply contracted the management responsibilities to a private corporation, as the public trust did in *Milo*. *See* 861 F.2d at 1196-97. Rather, the facts of the complaint suggest

---

[5] Wasatch takes issue with the district court relying on this figure (0.1% of the total budget) because it wasn't in the complaint. But the district court may rely on "matters of which a court may take judicial notice." *Gee*, 627 F.3d at 1186. The complaint disclosed the annual fees paid by Alta, and by simply taking judicial notice of publicly available budget information, the district court reasonably determined the percentage of the Forest Service's total budget that the permit fees comprise. *See* Joint App. 404-05 (citing Pub. L. No. 112-10, §§ 1741-1747, which provides the Forest Service budget for the fiscal year 2012). We find no error in the district court taking judicial notice of this figure.

the Forest Service merely leases federal land to Alta. The complaint thus fails to establish state action under the symbiotic-relationship test.

Wasatch also argues the snowboard ban meets the nexus test for state action. Under that test, Wasatch's complaint must plausibly "demonstrate that 'there is a sufficiently close nexus' between the government and *the challenged conduct* such that the conduct 'may be fairly treated as that of the State itself.'" *Gallagher*, 49 F.3d at 1448 (emphasis added) (quoting *Jackson*, 419 U.S. at 351).

Even after granting all reasonable inferences in Wasatch's favor, the complaint at best establishes that the Forest Service *knows* about the snowboard ban (through, e.g., Alta's signage and trail maps) and continues to approve its permit each year notwithstanding the ban. Wasatch nonetheless argues this is enough involvement by the Forest Service to constitute state action, because the snowboard ban "exists only because the Government either approves or ignores it when reviewing and approving each annual Plan, which must be prepared in consultation with the Government to become part of the Permit." Aplt. Br. 32.

But the complaint doesn't plausibly establish that the Forest Service "approves or ignores" the *ban itself* as Wasatch seems to now argue, *see* Aplt. Br. 32, but rather at best indicates that the Forest Service annually approves a winter site operation plan that, in part, authorizes Alta "to exclude any type of skiing device that [it] deem[s] creates an unnecessary risk to other skiers and/or the user of the device, or any device [it] deem[s] causes undue damages to the quality of the snow, or is not consistent with [its] business management decisions," Joint App. 95. At most, the Forest

Service approves Alta's plan with knowledge that Alta excludes snowboards under this provision, but the Forest Service doesn't make Alta's permit contingent upon a snowboard ban or otherwise encourage a snowboard ban.

And as Alta points out, general awareness of the ban is not sufficient to establish state action. The Supreme Court has explained that "a State normally can be held responsible for a private decision only when it has exercised coercive power or has provided such significant encouragement, either overt or covert, that the choice must in law be deemed to be that of the State." *Blum v. Yaretsky*, 457 U.S. 991, 1004 (1982). And "*[m]ere approval of or acquiescence in the initiatives of a private party is not sufficient to justify holding the State responsible for those initiatives under the terms of the Fourteenth Amendment*." *Id.* at 1004-05. (emphasis added). Here, the pleaded facts simply don't demonstrate the Forest Service in any way *encouraged* the snowboard ban or assisted in *enforcing* the ban. The complaint thus fails to establish state action under the nexus test.

Wasatch also asserts its complaint pleaded facts sufficient to show joint action between Alta and the Forest Service. To satisfy the joint-action test, Wasatch's complaint must plausibly establish that Alta is a "willful participant in joint action with the [Forest Service] or its agents." *Gallagher*, 49 F.3d at 1453 (quoting *Dennis v. Sparks*, 449 U.S. 24, 27 (1980)). For this inquiry, the focus "is not on long-term interdependence between the [Forest Service] and [Alta]" but instead on whether the Forest Service and Alta "have acted in concert in effecting a particular deprivation of constitutional rights." *Id.* But as with the nexus test, "the *mere acquiescence* of [the

13

Forest Service] in the actions of [Alta] is not sufficient." *Id.* (emphasis added). And
as discussed, Wasatch's complaint at best establishes the Forest Service knows of the
ban and acquiesces in its continued application, and notably doesn't establish that the
Forest Service and Alta "act[] in concert in effecting" the snowboard ban. *See id.* The
complaint thus fails to plausibly establish joint action between the Forest Service and
Alta.

Finally, Wasatch argues its complaint plausibly establishes state action under
the public-function test. To satisfy that test, Wasatch's complaint must plausibly
establish that the Forest Service delegated to Alta "a function 'traditionally
exclusively reserved to the State.'" *Gallagher*, 49 F.3d at 1456 (quoting *Jackson*, 419
U.S. at 352). We have cautioned that this test is difficult to satisfy because a function
is rarely deemed *exclusively* reserved to the state. *Id.*

Nonetheless, Wasatch argues the facts of its complaint plausibly satisfy this
difficult test, because "[f]ew public functions are as traditionally and exclusively
performed by the Government as management of National Forest property." Aplt. Br.
34. Wasatch again misses the point. While managing National Forest property may
be a traditional government function, operating a ski resort—including deciding
whether to permit or allow certain devices—isn't a power "traditionally associated
with sovereignty." *Jackson*, 419 U.S. at 353. The complaint thus fails to establish
state action under the public-function test.

Even if we grant all reasonable inferences in Wasatch's favor, the pleaded
facts at best establish that each year the Forest Service—with knowledge of the

14

snowboard ban—reviews and approves Alta's site plan and receives from Alta a usage fee. This isn't enough to establish state action for purposes of the Fourteenth Amendment. *See Blum*, 457 U.S. at 1004-05. Because Wasatch's complaint doesn't plausibly establish state action, we affirm the district court's Rule 12(b)(6) dismissal. And because this conclusion controls all issues on appeal, we decline to address Wasatch's challenges to the district court's alternative rulings.

Affirmed.

# UNITED STATES COURT OF APPEALS
## FOR THE TENTH CIRCUIT
## OFFICE OF THE CLERK
Byron White United States Courthouse
1823 Stout Street
Denver, Colorado 80257
(303) 844-3157

| | | |
|---|---|---|
| Elisabeth A. Shumaker<br>Clerk of Court | April 19, 2016 | Chris Wolpert<br>Chief Deputy Clerk |

Mr. Michael S. Anderson
Mr. Jonathan Schofield
Ms. Rachel Lassig Wertheimer
Parr Brown Gee & Loveless
101 South 200 East, Suite 700
Salt Lake City, UT 84111

**RE:**    **14-4152, Wasatch Equality, et al v. Alta Ski Lifts, et al**
    Dist/Ag docket: 2:14-CV-00026-DB

Dear Counsel:

Enclosed is a copy of the opinion of the court issued today in this matter. The court has entered judgment on the docket pursuant to Fed. R. App. P. Rule 36.

Pursuant to Fed. R. App. P. Rule 40, any petition for rehearing must be filed within 14 days after entry of judgment. Please note, however, that if the appeal is a civil case in which the United States or its officer or agency is a party, any petition for rehearing must be filed within 45 days after entry of judgment. Parties should consult both the Federal Rules and local rules of this court with regard to applicable standards and requirements. In particular, petitions for rehearing may not exceed 15 pages in length, and no answer is permitted unless the court enters an order requiring a response. If requesting rehearing en banc, the requesting party must file 12 paper copies with the clerk, in addition to satisfying all Electronic Case Filing requirements. *See* Fed. R. App. P. Rules 35 and 40, and 10th Cir. R. 35 and 40 for further information governing petitions for rehearing.

Please contact this office if you have questions.

Sincerely,

Elisabeth A. Shumaker
Clerk of the Court

cc:     Jared Carl Bennett
        Carlie Christensen
        Robert O. Rice
        Frederick Roger Thaler Jr.
        Calvin R. Winder

EAS/mb